At this time, we'll hear Barrett v. City of Newburgh. Good morning, Your Honors.  I believe there are three propositions which control this appeal. I'd just like to set them forth and then get into the arguments more deeply. First of all, under the 14th Amendment, under Canton and Oak in the case of this Court, the 14th Amendment would serve as a proper predicate for municipal liability claim that alleges a failure to train and discipline. Therefore, we believe the dismissal of the Minnell claim initially was improvident and erroneous. That was in March of 14. Did you intend to pursue a 14th Amendment claim from the beginning? No, because all this back and forth about amending a complaint in your letter of August 13, you say, gee, I made a mistake. I meant to say the 4th Amendment. I agree. So my question is, well, are you pursuing a 14th Amendment claim or a 4th Amendment claim? And did you change your mind at some point? I did change my mind. When I looked at the multiplicity of events which we later included in the first amended complaint, which was some 20 incidents over the seven-year period or more, as the first amendment complaint indicates, those were examples of what we had been able to uncover about the practices in the city. It came clear to me that under Canton we could meet a 14th Amendment analysis. So we did maintain that as a 14th Amendment claim, to answer your question. However. So it's not an excessive force claim, because Graham v. Conner says we're resolving this. It's an excessive force claim as a 4th Amendment claim. So you're saying it's a 14th Amendment substantive due process claim? I'm saying two things, just to be very clear. With regard to Monell, I'm saying you can have a 14th Amendment claim as pled under Canton and Oken. I'm also saying that that can complement a 4th Amendment claim with regard to the police officers. There are two claims in the case, one against individuals, the John Does. We'll get to that in a moment. That's a 4th Amendment claim under Conner. There's no question about that. That's a 4th Amendment pretrial detainee claim, alleging excessive force, knowingly using excessive force in light of the circumstances. The question, the technical question is can you have both of those claims conjoined? The district court said no. The concern I have is that a Monell claim is a claim that the city or the decision maker has a pattern and practice of doing what the individual officer did. Right. So I'm not sure if what the individual officer did was violate 4th Amendment rights. How the pattern and practice of doing so becomes a 14th Amendment claim. Help me out. Okay. Well, the way it happens is that Canton indicates the standard for municipal liability. And under Canton, if you have a pattern and practice or custom, which is another way of putting it, a number of events which suggest that there has been a lack of training and to a reasonable certainty, a moral certainty, this court has said, you'd have a repetition of that if you didn't increase and improve significantly your training or your disciplining of miscreant officers. You have a 14th Amendment claim. The underlying fact pattern in each individual case, as Judge Droney pointed out, under Graham can be actionable under the 4th Amendment. But that, I don't think we should get so far abreast on that because there's a simple way to cure that here. As your case has pointed out, particularly Laura Lee and Kresge, once the district court determined that the only way I could plead the case was under the 4th Amendment, which the district court determined in March of 2014, I had requested that he allow me then to plead the case under the 4th Amendment. Your cases say very clearly that when the district court has given that guidance in a decision, and you're well within the statute of limitations, there should be the allowance, which was denied here, of making the amendment. That doesn't quite capture what occurred. I mean, the district court did give you leave to file a second amended complaint, and that was when you represented that you were going to amend to change your claim to a 4th Amendment. That was the 1st Amendment complaint, Your Honor. Respectfully, that's the 1st Amendment complaint, and this Court has already indicated. You never did it. It's not that I never did it. I didn't do it because, and this is what was pointed out in Laura Lee and Kresge, I believed in good faith that there was a 14th Amendment claim, which I was entitled to believe. What this Court said in those two cases is someone can, once the district court makes it clear, squarely within the time limitations, you should be allowed then to replead, which the district court did not allow me to do. That was what was specifically denied after the March decision. In your letter, you say, I did inadvertently plead a 14th Amendment violation, not the proper 4th Amendment violation, and would request leave to submit an amended complaint, which notes the proper predicate for this suit. That was earlier. The district court gave you permission, okay, go ahead, file the amended complaint. You didn't do it. I did do it. I did do it. It's not that I didn't do it. I maintained the 14th Amendment, as I answered to you earlier, and I explained to you why I did that. Then the district court entered its decision. And the import of Kresge and Laura Lee is once the district court entered the opinion denying my 14th Amendment, saying you're wrong, Sussman, that's wrong, I should have, under those precedents, had the ability to then make a 4th Amendment pleading. That's my point. And that's why the issue is being elided by so much focus on which is it. Let's assume it's just the 4th Amendment, which I'd still disagree with, but let's assume it's true. I still should have been given that ability. The third point that we get to is New York State's relation-backed doctrine, CPLR 21024, and applying Hogan v. Fisher. Now here it seems to me clear that the district court also erred when it disallowed me from naming the police officers as Foster and Burns as set forth in our December 2015 complaint. Under 15C1A, Federal Rule of Civil Procedure, you import 1024, and the analysis proceeds under 1024. And with regard to that analysis, there are two showings. One is due diligence, and the other is does your first pleading, which identifies the John Does, give the sufficient information to, if you will, identify them? We meet both those standards. What do you do about the Rule of 15C requirement that there be a mistake concerning the proper party's identity? And Hogan, which says that not knowing a John Does situation is not a mistake of identity. That's where the 15C1A analysis comes in. There are two different prongs. You're correct with regard to one prong, and your Barrow decision discusses that prong and makes clear the point you just made. If it's a John Does, it's not a mistake. But there's an alternative analysis, which we explain in our brief, which doesn't require a mistake. It requires simply that you later come to understand that it's the relation back argument. You later come to know the names. So you haven't made a mistake. You later come to the information. You're outside the statute of limitations period, which is where the relation back argument comes in. And you have to meet two standards. The standards are, did you diligently attempt within the limitation periods to find out? And I would submit to you that under Hogan v. Fisher, that explicates what due diligence means, and we clearly mirror that. If you look at the JA, Joint Appendix 171 to 195, you'll see repeated efforts during the limitations period, both through requests for production, letters, a subpoena to the city, to get the names. They wouldn't produce the names. Okay? So it was clear, if you look at that compared to the Hogan analysis. They weren't a party anymore, right? The city was not a party, but the case was still proceeding. The case had not been dismissed. And Mr. Posner's office is the only one who ever put in an appearance on behalf of the John Does as well as the city. Mr. Posner then took the position. They put in an appearance on behalf of the John Does as well as the city? The initial appearance, as I understand the appearance, was for all the defendants. And he's always represented in these cases. I know that Mr. Posner, my friend, submitted an affidavit which says, I didn't represent the individuals. I just represented the city. But in every single case we have had, and as I pointed out in the brief that we've represented seven of those 20 cases, we were on the other side, we named individuals, and he represented both the city and the individuals. After the individuals were known? Were known. After they were known. Was adverse due diligence finding a fact? Well, if it's a finding fact, it's clearly erroneous, and you have a standard of review as to that. It's clearly erroneous, but the basis for the district court's finding that you had not shown due diligence was that it was more than a year after the complaint was filed before you sought to identify the officers, and that when the defendant's city did not respond, you never alerted the court to this until after the limitations ran. And there is case law that suggests that that may be a problem for you. So how do we find clear error in the district court's conclusion that those two facts support its adverse due diligence finding? Well, I think sometimes attorneys are too deferential to district courts, if I may respectfully say that. In this particular instance, we had the case proceeding. The case was not finally dismissed, as I mentioned earlier. All you had was a Monell determination. There was no district court Rule 16 status conference. It may be that I should have insisted we have a status conference and proceed. I'm not arguing that. I probably should have done that. But the question is, once you look at what we did do, in November of 2016, we served our Rule 26a disclosures. We then in March, without a Rule 16 scheduling order, because none had ever been entered in the case, propounded our request for documents. This is well within the statute of limitations period. When they weren't responded to, we sent several letters to them. We sent a subpoena when Mr. Posner indicated that he wouldn't proceed. I'm not understanding how the district court's finding is clear error. I'm looking at a New York Second Department case called Temple versus New York Community Hospital. In which the court recognized that the plaintiff had served prior to the statute of limitations certain discovery demands. But when the responses received were less than adequate, the plaintiff failed to seek further discovery or to alert the district court to the omission. And it upheld the finding that that was a lack of due diligence. So if the New York courts are prepared to recognize that that kind of delay can equal a lack of due diligence, how do we say the district court's finding here was clear error? Well, I think that it depends on the exact facts in the case. I've read the Temple case. And I don't think it was nearly as assiduous an effort as we made in the limitations period in that period. To proceed in a cooperative way with defense counsel to get the information we needed. And I think that distinguishes Temple from this case. The fact is, when do you get the district court involved? If you're having a statute of limitations run and you're not getting discovery from your adversary, you have some obligation to let the district court know before limitations expire. I think the due diligence standard respectfully is what we did during that period, vis-à-vis our adversary, to try to get the information we needed. I agree that . . . Can I just be clear on the date? Yes, of course. August 21st, Mr. Posner writes you and said, My client's out of the case. The city's out. The town's out, right? And the statute ran October. Is that right? Three years? So, to follow up on Judge Radji, what did you do between August and October when you knew . . . You still had some time. You had three months. I think you served a subpoena on the chief of police, right? I handed a subpoena to the city within the context of the litigation, which was pending. In other words, the caption was the caption of the litigation that was pending. Did it say, show up on September 15th? September 15th to proceed, and they did not show up. And, at that point, we waited to see whether we would get the information from them, because often parties provide information and they don't show up. They didn't do that. My client was . . . Did you contact the district? We did not. Look, we've got two months to go on this statute. We did not. We're getting not what we need from the city. We did not. My client was working, as I understood it, and as later bear fruit, to get the information from the city. She eventually got the information in November, which prompted our making the letter to the court and the proceedings from there. So, we did not contact, as Judge Radji correctly points out, the district court from the time that we were getting what I think was an obstinance from the city and a lack of cooperation. We did not contact them until we got the information and were then ready to proceed. My time has long elapsed. Thank you. Good morning, Your Honors. David Posner, McCabe & Mack for the City of Newburgh and the individual officers. I would like to just begin by correcting one or two misstatements. I did not appear for the John Does. My appearance is certainly in the district court docket. I did not appear for the John Does until they were identified sometime and served until 2016. I appeared for the City of Newburgh and only represented the City of Newburgh in this case throughout all relevant proceedings. Second, to Your Honor, Judge Radji, the proposition that Oaken and Canton were 14th Amendment-based Monell claims, due process claims, the underlying claim against the police officers were 14th Amendment claims. One was a denial of medical care, I believe, in the police station. So, when the underlying tort, constitutional tort of the public official is Fourth Amendment, the Monell claim, lack of training against the municipality, is premised on the Fourth Amendment. If, as in Oaken and Canton, the underlying grievance against the individual officer is 14th Amendment, then the Monell claim, failure to train, etc., would be premised on the 14th Amendment. I think Your Honor used the word they track each other or there's a symbiotic relationship between the Monell claim, which is basically extending, as this court has said in Siegel, it's extending the underlying misconduct of the public official to the municipality because of its own failure to train, which makes it also responsible for that underlying, in this case, Fourth Amendment claim. How does applying the statute of limitations in this case serve any purpose of the statute of limitations? After all, the city certainly knew and these police officers certainly knew that they were being sought in this case. It really sounds as though the plaintiff was mousetrapped. And no response, not even an ordinary courtesy until the statute of limitations has run. That's not accurate, Your Honor. First of all, the police officers did not know about this case. Mr. Sussman has postulated in his legal briefing that he knows Mr. Posner. The city would certainly be able to figure out from the time and date of this who they are. No, Your Honor, I misunderstood your question. No, the city would be able to know who the officers were. The officers had no knowledge of this case. I thought that was your question. The officers weren't sitting there going, he, he, he. They knew nothing about this case. You were representing the city, and the city, the case had not been dismissed yet, had it? The case was dismissed. So you were counsel for the city. You're being asked a question about something the city would know about, and you don't respond to it. Well, we did respond in August. We said, hey, we're not parties to this case. He served formal discovery requests. A very important point about the diligence is foil. Why did you say we are not a party? I thought the case was still ongoing. No, the case was terminated against the city when the district court granted my motion to dismiss. The only parties, and that's a kind of an esoteric question, is a John Doe who's never been identified, never been served. This case sat dormant on the district court docket for 15 or 16 months. Ms. Barrett versus John Doe. That's all that, nothing happened. My file was closed. That's it. Then I get. After August when you said, we're not going to respond to your discovery requests, we're out of the case. Right. Between that time in October, what more could Mr. Sussman have done? He served the chief of police with a subpoena. He served, he served, well. How else would you get that information? Well, you make a foil request, which was never done, in which the New York state courts, in every opinion I've read. And how many days elapsed before you have to respond to a FOIA request? Well, it depends when you serve it, Your Honor. I mean, he could have served it back in 2012, 13, 14, or 15. The question was August. What else could he have done? He could have written. And you say he could serve a FOIA request. That could take three years. Well, then I didn't, I misspoke, if that's how you interpreted my answer. That's the answer. If not, isn't what happens is you're in front of the district court, and the district court tells the city, whether it's Newburgh or the city, or New York City or whatever, to identify the officers. That never happened. And that, usually the Valentin order type of thing happens when you have a pro se plaintiff. This was a counsel plaintiff who had every ability and every resource at his disposal. So your position is you would wait until Mr. Sussman called upon a busy trial judge to ask you a question that Mr. Sussman had already put to you, and you declined to answer. Mr. Sussman. It sounds like you're suggesting that what's required is to waste the time of a trial judge on a matter that usually would be handled as a matter of courtesy. Well, I disagree with that, Your Honor. And Mr. Sussman does not point to any law or case law that suggests that a non-party has to respond to discovery. I would question, perhaps, if I responded to that when I had no obligation to do that. Mr. Vasta and Mr. Burns could be a little upset that I am unnecessarily, I'm not zealously representing the city's interest and or their interest if this is what's happening. I have an obligation to respond and to follow the rules. But you admit that you would and should give that information if your adversary had asked for a conference with the court. It would be appropriate for the court to direct you to answer that question, and you would have answered it. I would follow any directive of the court, Your Honor. No, I'm serious. Yes, I understand. I would have done that, as would any attorney. But Mr. Sussman's office did not request a conference, did not try to invoke any aid in discovery, did not . . . And believe me, Your Honor, we're talking now two and a half years. My client was dismissed from this case in March 2014. The case sat dormant until April, I believe, of 2015. Then a discovery demand comes to a non-party it wasn't responded to. And then a letter was sent saying, hey, I don't have to respond to this. My client is dismissed from this case. We do not know what they did. And under the due diligence, the straight courts examined what did you do, plaintiff, prior to the statute of limitations. Ms. Parrott never submitted an affidavit what she tried to do. All we have learned from these papers is sometime in mid-November 2015, they learned the names of these two officers. But we don't know what effort they underwent to get that. When they started those efforts . . . I might be missing something here, but my recollection is that, at least in federal search warrants, there's an inventory that is given to the person who searched shortly after the search occurs to show what we found and what we've taken from your apartment. And it lists the officers who were involved in the search. Was anything like that given to her boyfriend? Did she just say, hey, could I take a look at that inventory? I'm going to sue the two cops that handcuffed me. Do you know? I do not know if there was an inventory . . . if anything was even seized. I do not know. I know they searched pursuant to a warrant, but they may not have seized anything, for all I know. Now, that's not part of this record. But he got a copy of the warrant. To my knowledge, he did. Do you know if either of these two officers were listed as the affiants on the warrant? I do not know the answer to that. But I do know that city police records are available for the asking, certainly under FOIL. And they could have made that request as early as October 2012. And this case was commenced, I think, in June 2013. And no request was made. No discovery demands were made. The district court didn't enter an order staying discovery because we were having this battle over a 12B6 motion. We were . . . You never asked for the names before the city was dismissed? No. And how long a period of time was that after the lawsuit was filed? The city was dismissed in March 2014. The case was filed in June 2013. So that was nine months later that we were dismissed from the case, after it was commenced. And there was no stay of discovery. We made our motion. And the rest, I guess, is history. The . . . I think it is important that the Lorelei case . . . I just want to . . . We have Mr. Sussman's recognition, pre-motion, that he made a mistake in pleading the 14th Amendment, which takes this case, certainly, out of Lorelei. Lorelei, if I may read one sentence from that, the criticism of the district court procedure was the so-called Hobson's choice provided to the plaintiff's attorney when he's confronted with a letter request from the defendant, they want to move to dismiss, explaining their reasons. Would you have responded and given the names of the officers, if asked, before your client . . . before the city was dismissed in March of 2014? If I was the party and I got a discovery demand, I would have responded to them. That is the question. Yes, of course. You would have responded. Would you have responded with the names? Yes. How could I not? I mean, I would be bound by the federal . . . I'm sorry. Bound by the federal rules to respond to propounded discovery that's properly propounded. Of course, I would have responded. If they sent a document demand, we would have sent them the police reports. But there was nothing. There was radio silence until March or April of 2015. But Lorelei says, reference to, you know, allowing an amendment post-district court ruling. Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies. That certainly doesn't apply here because these deficiencies were not only discussed pre-motion, they were acknowledged pre-motion by a counsel plaintiff. Lorelei was a complex commercial reality with a long, multi-pronged complaint. And the nuances of the sufficiency of the complaint may, quote, be borderline, and then hence subject to reasonable dispute. Well, I suggest here, Your Honor, certainly in light of Mr. Counsel's concession in his letter, there is no reasonable dispute. And as I think it was mentioned earlier, the Fourth Amendment applies to force cases. There is no, I hate to use the word black letter principle, but that, going back to Graham v. Conner, when the police do a seizure, the unreasonable search and seizure clause of the Fourth Amendment is all that applies. There is no complex issue here. This is not borderline. The plaintiff knew and in writing told the court he knew that he had made a mistake. Now, I guess, so I don't think reasonable minds can disagree. Now, Mr. Sussman perhaps thought he was going to or wanted to make some kind of breakthrough in the law here. I don't know, but I think given the record and the correspondence with the court and the court conference where we discussed it and the permission given to do it, if he changed his mind, perhaps a follow-up letter would have been appropriate to the district court, with reasons of why, by the way, I said I would do this, but now I no longer think I need to do this. And then in the amendment complaint, he doesn't even go fourth and fourteenth. He just goes fourteenth. Thank you. We'll hear rebuttal. First point is, I hear Mr. Posner and I read the district court's decision. And there's no case, there's no case that says what Mr. Posner said the law is. There's no case that says you cannot marry a Fourth Amendment claim against the individual officers in a Fourteenth Amendment substantive due process claim. Canton doesn't say you can't do it. There's no case that says you can't do that. So when he says you're trying to break through the law, when I understood doing the research to The law says that you can have a Fourth Amendment claim against the officers and a Fourteenth Amendment claim against the cities for a failure to train them to do what they violated the Fourth Amendment. There's no, excuse me, sorry. There's no case, there's no case that settled, there's no case that says either way. That's my point. The extent that the Monell claim is a claim that you failed to train to prevent them to violate a particular constitutional right, isn't the claim usually brought as a violation of that constitutional right? Yes, but there's no requirement that that be done. That's the point. There's case law that says that the Fourteenth Amendment substantive due process claim should not be raised when there is a specific constitutional protection available. But the point is the Fourth Amendment does not in and of itself apply any more to a municipality, if you will, than the Fourteenth Amendment. The Fourteenth Amendment's broad protection of substantive due process can be invoked where, and I believe that's the case here, you have a longstanding ignorance of a number of instances of police misconduct. That's what you get. And those instances are... Misconduct in the use of excessive force. Misconduct. Here, again, it's not just excessive force. Remember the claim. The claim is that this woman had an injury. That injury was known to the police officers. The police officers, notwithstanding that, engaged in the force. I believe that is clearly a substantive due process claim as well as a Fourth Amendment claim. It's a borderline claim. It could be either. Under the deliberate indifference standard of the Fourteenth Amendment, it could be either. Let me just address briefly, because I know time is short, the due diligence issue. Because I think it's important to put this in context. On March 24th, when we did propound our interrogatories and requests to production to Mr. Posner, there was absolutely no response from Mr. Posner. He did not then say, I don't represent the individual John Doe's, nobody represents the individual John Doe's, and we won't be responding. We sent him, as the record shows, four additional communications between then and August. There was no response by him until August 21st. The other point, Judge, that's been raised is what occurs with a motion to dismiss pending? As I'm sure you know, there's normally a Rule 16 conference. At the Rule 16 conference, a discovery schedule is set. A Rule 16 conference was not held in this case. What was held was a pre-motion conference to address a motion to dismiss. That also is typically done in the district courts. At that time, no discovery schedule is set, and discovery is contrary to what Mr. Posner says, stayed until there's a resolution of the motion to dismiss. They don't go on concurrently, which is what Mr. Posner is telling you happens. Do you concede that Mr. Posner appeared for the city, but not for the John Doe's? I don't concede that. I concede that what happened was John Doe's. No one appeared for the John Doe's, and in every case, as I told you earlier, the practice that Mr. Posner, with our office, has always employed is he appears for the individuals. In this case, there were no named individuals. There were John Doe's. So, ipso facto, he was appearing. No one else was for the John Doe's. No one else came forward and said, I'm going to be here when the John Doe's are identified. I've had that in cases. It could mean that nobody appeared for them. It doesn't mean that the only lawyer who appeared, the one who appeared for the city, was also appearing for the John Doe's. Judge, I'm not disagreeing conceptually. What I'm trying to explain to the court... Appearing for a client imposes all kinds of obligations on an attorney. But the point is this. If there are John Doe's, and Mr. Posner has always represented the individual named officers concurrent with the city, in the Cobb case this occurred...  And misbehaving police officers. And they may very well want their own counsel. And indeed, nobody would want to represent both of them. And in every single case like that, he has represented both. Every single case that's listed. You go back to look at the docket. Once they're identified. The point... What I don't understand in this case is that it's a case in which the claim pertains very much to a particular incident involving particular police officers. I don't understand why a discovery demand wasn't made literally within weeks of filing the complaint. Because the first thing that happens in the piece of litigation is that the district court gets a letter from Mr. Posner indicating he wants to move on the Minnell claim. And that's what the district court attends to. Normally then what happens... That doesn't prevent you from filing your request. I'm trying to explain that it does. Because when discovery occurs in the federal district courts in our district, at least in White Plains, is when we have a Rule 16 conference and a schedule is then set for discovery. Parties do not jump that schedule and start making demands. I know that happens in state court routinely. It does not happen in the federal court in White Plains. It may happen somewhere else. That's not how we practice law. And Mr. Posner knows that because he's been in case after case. So what happens is we did not have... And, you know, you made an interesting point, Judge Jacobs. The district courts are busy and they convene Rule 16 conferences at their convenience, if you will. The party doesn't jump up and down and say, hear me now. We understand they're busy doing what they're doing. So here I'm essentially waiting for Judge Roman to convene a Rule 16 conference and set a discovery schedule. It doesn't happen. March comes, and then, within seven months before the statute of limitations or six months, I propound my discovery demands to counsel for the city. And as I understand it, counsel for the police officers, who are agents of the city, by the way. I understand they can be independent actors. This isn't in the course of their duty type case. This isn't a case where we're suing them for something that's ultra vires, where they're getting their own counsel necessarily. And the history is they never get their own counsel in that city. So we wait for him. He does nothing, and that's where we are. Thank you for your attention. Thank you both. We'll reserve decision.